E-FILED
Tuesday, 20 March, 2012  02:22:27 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CAROLYN FINFROCK, as Executor of the Estate of Doris E. Finfrock-Ware, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  11-3052 |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on the parties' cross-motions for summary judgment.  <u>See</u> Plaintiff's Motion for Summary Judgment (d/e 10); Defendant's Motion for Summary Judgment (d/e 11).  The sole issue is whether Treasury Regulation 20.2032A-8 (a)(2) (26 C.F.R. § 20.2032A-8 (a)(2)) is a valid regulation.  For the reasons that follow, this Court finds that the regulation is invalid.  Because additional issues remain to be determined, however, the Motions for Summary Judgment are taken under advisement.

# I. FACTUAL BACKGROUND

The parties have stipulated to the following facts

Plaintiff is the executor of the estate of her deceased mother-in-law, Doris Finfrock-Ware (the decedent), who previously resided in this District.  The decedent died on January 3, 2008.

At the time of her death, the decedent owned 61.05% of the issued and outstanding stock in the farm corporation Finfrock Farms, Inc. (Finfrock Farms).  Finfrock Farms was a closely-held business pursuant to the Treasury Department regulations.

At the time of decedent's death, and for at least 8 years prior to her death, Finfrock Farms owned the following items of real property: Item 1 (40 acres of real property); Item 2 (122.5 acres of real property); Item 3 (377.21 acres of real property); and Item 4 (165 acres of real property).  There was no formal agreement describing who would operate the farm on behalf of the corporation.  However, for the entire 8 years preceding the decedent's death, her son James Finfrock actively farmed Items 1 through 4.

On the decedent's death, Items 1 through 4 passed indirectly to qualified heirs as defined in 26 U.S.C. § 2032A(e) through a change in ownership of Finfrock Farms.  The decedent estate's Internal Revenue Service (IRS) Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return ("Form 706"), was filed on October 2, 2008.

In Schedule A of the estate's Form 706, the estate listed decedent's share of Finfrock Farm's interest in Items 1 through 4, which Plaintiff alleges constituted "qualified real property" as that term is used in § 2032A.  The estate's "adjusted value of the gross estate," as that term is used in 26 U.S.C. § 2032A(b)(1)(A) and (B), was $2,608,848.00.  The estate's "adjusted value of real property," as that term is used in 26 U.S.C. § 2032A(b)(1)(B), which consists of the estate's interest in Items 1 through 4 listed in Schedule A of the Form 706, was $1,775,000.00, representing approximately 68% of the adjusted value of the gross estate.

The estate made a regular election to specially value its share of Finfrock Farm's interest in Item 4.  The estate valued Items 1 through 3 using the usual valuation method.  The special use valuation of Item 4

was $227,233.00.  The adjusted value of Item 4, $402,930.00,

represents approximately 15% of the adjusted value of the gross estate.

The estate elected to value only the farmland referenced above as Item 4

pursuant to 26 U.S.C. § 2032A because Plaintiff wished to continue

operating Item 4 as a farm, whereas other members of her family opted

not to continue farming Items 1through 3 and sold them to unrelated

third parties shortly after the decedent's death.

The IRS examined the Form 706 and determined that the estate's

election to value only part of the qualifying real property did not meet

the requirements of applicable federal regulation 26 C.F.R. § 20.2032A-8

("Treasury Regulation § 20.2032A-8").  Under Treasury Regulation §

20.2032A-8, not only must the adjusted value of all of the estate's

qualifying real property exceed the 25% threshold as provided in 26

U.S.C. § 2032A(b)(1)(B), but the value of the real property for which the

executor makes the election also must exceed such threshold.  As

indicated above, because the estate's election only included its interest in

Item 4, the adjusted value of which was only 15% of the adjusted value

of the gross estate, the estate did not meet this threshold.  Accordingly, Defendant "increased the returned value of Item 4 on Schedule A of the 706 return from $227,233.00" (its special use value) to $402,930.00 (its agreed market value) and assessed an additional tax on account of this increase.  Statement of Undisputed Fact No. 13.

On behalf of the estate, Plaintiff timely filed a claim for refund and paid the additionally assessed tax.  By letter dated February 7, 2011, Defendant denied the estate's claim.

On February 23, 2011, Plaintiff filed this lawsuit on behalf of the estate.  Plaintiff contends that the estate should be entitled to elect a special use valuation for its interest in Item 4 notwithstanding Treasury Regulation § 20.2032A-8 because the regulation is invalid.

## II.  JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1) (providing that "[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of[] . . .  any civil action against the United States for the recovery of any internal

revenue tax alleged to have been erroneously or illegally assessed or

collected").  Venue is proper in this District because Plaintiff resides in

Waynesville, Illinois, which is located in DeWitt County.  <u>See</u> 28 U.S.C.

§ 1402(a)(1) (providing that a civil action against the United States

under § 1346(a)  may, with certain exceptions not applicable here, be

prosecuted only "in the judicial district where the plaintiff resides");

Complaint for Tax Refund, ¶ 4 (asserting Plaintiff is an individual

residing in Waynesville, Illinois).

## III.  LEGAL STANDARD

The parties have filed cross-motions for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  A court

may grant summary judgment only if the "pleadings, the discovery, and

discovery materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u>, <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   Here, the parties agree that

the material facts are not in dispute and that the case turns on a question

of law.  Therefore, the case may be properly resolved on a motion for

summary judgment.  See, e.g., Gallenberg Equipment, Inc. v. Agromac

Intern., Inc., 10 F. Supp. 2d 1050, 1052 (E.D. Wis. 1998).

## IV.  ANALYSIS

The purpose of § 2032A, which was enacted as part of the Tax

Reform Act of 1976, was "to encourage the continued operation of family

farms and other small family businesses by permitting real property used

for the farm or business to be valued upon its present use, rather than

upon its highest and best use."  Schuneman v. United States, 783 F.2d

694, 697 (7th Cir. 1986).   Specifically, "§ 2032A relieves taxpayers from

having to sell an eligible family farm or business when the income from

its present use is insufficient to pay the tax calculated upon its highest

and best use."  Id.

To qualify for the special use valuation, several conditions must be

met.  One of those conditions is that "25 percent or more of the adjusted

value of the gross estate consists of the adjusted value of real property

which meets the requirements of subparagraphs (A)(ii) and (C)."  26

U.S.C. § 2032A(b)(1)(B).  The parties agree that Items 1 through 4

represented approximately 68% of the adjusted value of the gross estate.

The Treasury Regulations, however, provide that while an estate

need not elect special use valuation with respect to all of the qualifying

property, the property actually elected for the special use valuation must

constitute at least 25% of the adjusted value of the gross estate.  See 26

C.F.R. § 20.2032A-8(a)(2) ("An election under section 2032A need not

include all real property included in an estate which is eligible for special

use valuation, but sufficient property to satisfy the threshold

requirements of section 2032A(b)(1)(B) must be specially valued under

the election"); see also Miller v. United States, 680 F. Supp. 1269, 1270

n. 1 (C.D. Ill. 1988) (noting the interpretation of the regulation is that

the election must be made on property valued at 25% or more of the

adjusted value of the gross estate).  Defendant argues that this regulation

is valid and, because the property elected for special use valuation (Item

4) constituted only 15% of the adjusted value of the gross estate, Plaintiff

is not entitled to the refund.  Plaintiff argues that the regulation is invalid

and in conflict with the statute.

This is not the first time the issue has come before a judge in this district. In <u>Miller v. United States</u>, 680 F.Supp. 1269, the district court found Treasury Regulation § 20.2032A-8(a)(2) invalid by using the test that preceded the test articulated by the United States Supreme Court in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). The <u>Miller</u> court found that the Treasury Regulation was an interpretive regulation, promulgated under the general rule-making power of the Code, and represented an invalid exercise of that power. <u>Miller</u>, 680 F. Supp. at 1273-74. The court concluded that Treasury Regulation § 20.2032A-8(a)(2) added a requirement not found in the underlying statute that was inconsistent with the statute. <u>Id.</u>

While the parties dispute the persuasive authority of <u>Miller</u>, the parties agree that the test articulated by the United States Supreme Court in <u>Chevron</u> is the appropriate test to apply when reviewing the challenged Treasury Regulation. <u>See</u> <u>Mayo Found. for Med. Educ. & Research</u>, 131 S. Ct. 704, 713 (2011) (applying the <u>Chevron</u> test to

review of a Treasury Department regulation, noting "[t]he principles underlying our decision in <u>Chevron</u> apply with full force in the tax context").   Under the <u>Chevron</u> test, a court, when reviewing an agency's interpretation of a statute it administers, first determines "whether Congress has directly spoken to the precise question at issue."  <u>Chevron</u>, 467 U.S. at 842; <u>see also</u> <u>Emergency Servs. Billing Corp.  v. Allstate Ins. Co.</u>, 668 F.3d 459, 465 (7th Cir. 2012) (identifying the two-step <u>Chevron</u> test).  If the intent of Congress is clear, both the court and the agency "must give effect to the unambiguously expressed intent of Congress."  <u>Chevron</u>, 467 U.S. at 843.  That is, "[i]f the plain meaning of the text either supports or opposes the regulation, then we stop our analysis and either strike or validate the regulation."  <u>Bankers Life & Casualty Co. v. United States</u>, 142 F.3d 973, 982 (7th Cir. 1998).

     If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  <u>Chevron</u>, 467 U.S. at 843 (noting that Congress may explicitly or implicitly leave a gap for

the agency to fill); <u>see</u> <u>also</u> <u>Mayo</u>, 131 S. Ct. at 714 (identifying step two

of the <u>Chevron</u> test as a determination of whether the rule is a

"reasonable interpretation" of the statute).  In the Seventh Circuit, the

legislative history and other appropriate factors are generally considered

during step two of the <u>Chevron</u> test.  <u>Emergency Servs. Billing Corp.</u>, 668

F.3d at 466.

A.    Treasury Regulation § 20.2032A-8(a)(2) Is Invalid Under the
      <u>Chevron</u> Analysis

In this case, Plaintiff only challenges step one of the <u>Chevron</u>

analysis.  That is, Plaintiff argues the statute is clear and unambiguous

that the 25% or more requirement only applies to qualify an estate for

the special election but does not require that the executor elect to apply

the special use valuation to property that constitutes 25% or more of the

adjusted gross estate.  Plaintiff admits that the Treasury Regulation       §

20.2032A-8(a)(2) would meet step two of the <u>Chevron</u> test but asserts

that this Court need not reach step two.  <u>See</u> Plaintiff's Combined

Response to Defendant's Motion for Summary Judgment and Reply in

Support of her Own Motion for Summary Judgment (d/e 12), p. 9

(stating that "we are not going to waste this Court's time arguing that    .
. . [the regulation] would fail under Chevron Step 2" because the
"regulation is not outrageous, or arbitrary and capricious").

In contrast, Defendant argues the statute is "silent as to how much
of the qualified real property included in the decedent's gross estate must
be subject to the special use valuation election."  Defendant's Cross-
Motion for Summary Judgment and Response to Plaintiff's Motion for
Summary Judgment (d/e 11), p. 3.  Defendant asserts the Secretary of
the Treasury clarified this ambiguity created by silence by promulgating
Treasury Regulation § 20.2032A-8(a)(2).  This Court agrees with
Plaintiff.

Under step one of the Chevron test, this Court first looks to the
language of the statute.  Khan v. United States, 548 F.3d 549, 554 (7th
Cir. 2008).  The statute provides that if a decedent was a resident or
citizen of the United States, the executor elects § 2032A, and the
executor "files the agreement referred to in subsection (d)(2),"[1] then

---

[1] Subsection (d)(2) provides that "[t]he agreement referred to in this
paragraph is a written agreement signed by each person in being who has an interest

"qualified real property" may be valued at its current use as opposed to

its best use.  See 26 U.S.C. § 2032A(a)(1); see also LeFever v. Comm'r of

Internal Revenue, 100 F.3d 778, 782 (10th Cir. 1996) (noting that each

person having an interest in the property must sign and file a personal

liability agreement under § 2032A(d)(2)).  The statute defines "qualified

real property" as follows:

> **(b) Qualified real property.--**
>
> **(1) In general.**--For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if–
>
> > **(A)** 50 percent or more of the adjusted

---

(whether or not in possession) in any property designated in such agreement consenting to the application of subsection (c) with respect to such property."  26 U.S.C. § 2032A(d)(2).  Subsection (c) provides that if the qualified real property ceases to be used for the qualified purpose within 10 years after the decedent's death, an additional estate tax will be imposed.  26 U.S.C. § 2032A(c).  See also Estate of Gavin v. United States, 113 F.3d 802, 806 (8th Cir. 1997) (noting that "Congress included § 2032A(c) 'to foreclose abuse of the privilege by taxpayers who would engage in family farming only long enough to reap the estate tax benefits and then convert the property to a more lucrative commercial use'" (quoting Williamson v. Comm'r, 974 F.2d 1525, 1527 (9th Cir. 1992))).

value of the gross estate consists of the adjusted value of real or personal property which--

> **(i)** on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and

> **(ii)** was acquired from or passed from the decedent to a qualified heir of the decedent.

**(B)** <u>25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A)(ii) and (C),</u>

**(C)** during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which–

> **(i)** such real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the decedent's family, and

**(ii)** there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, <u>and</u>

**(D)** <u>such real property is designated in the agreement referred to in subsection (d)(2).</u>

26 U.S.C.A. § 2032A (emphasis added).

Therefore, under the plain language of the statute, to meet the definition of "qualified real property," 25% or more of the adjusted value of the gross estate must consist of real property that (1) "was acquired from or passed from the decedent to a qualified heir of the decedent" (26 U.S.C. § 2032A(b)(1)(A)(ii)); and (2) has been used for a qualified use for 5 of the 8 years preceding the decedent's death and for which there was material participation by the decedent or a member of the decedent's family in the operation of the farm (26 U.S.C. § 2032A(b)(1)(C)).  Subparagraph (D) further defines "qualified real property" as "such real property" that is designated in the agreement required by subsection (d)(2).  26 U.S.C. § 2032A(b)(1)(D).

Notably, the statute does not require that real property constituting 25% or more of the adjusted value of the gross estate be "designated in an agreement referred to in subsection (d)(2)." 26 U.S.C. § 2032A(b)(1)(D).  The 25% or more requirement is a means to limit the benefit of the special use valuation to family farms and family businesses. Nonetheless, under the plain language of the statute, once the estate meets the thresholds identified in subsections (1)(A), (1)(B), and (1)(C), the only other requirement to qualify as "qualified real property" is to designate the property in the required agreement.  Congress did not require that the designation be of all or a certain percentage of the real property in the estate that meets the requirements of 1(A), 1(B), and 1(C).  See, e.g., Miller, 680 F. Supp. at 1273 (finding "[t]he language of Code § 2032A(b)(1)(B) . . . cannot be said to be ambiguous with respect to the 25% requirement which the regulation imposes").

This Court finds that § 2032A(b) is neither silent nor ambiguous on the precise issue – whether an executor can elect for special valuation property that constitutes less than 25% of the gross value of the adjusted

value of the gross estate.  The statute unambiguously provides that an

executor can do so.

Having found the statute unambiguous, the Court next determines

if the plain meaning of the statute supports or opposes Treasury

Regulation § 20.2032A-8(a)(2).  See Bankers Life & Casualty Co., 142

F.3d at 982 (explaining step one of the Chevron test).  Here, the

regulation  imposes an additional requirement that the property

designated by the agreement referenced in § 2032A(b)(1)(D) and (d)(2)

for special use valuation must constitute at least 25% of the adjusted

value of the gross estate.  This additional requirement is contrary to the

plain language of the statute.  See, e.g., Miller, 680 F. Supp. at 1273

(finding that "the regulation clearly imposes an additional, substantive

requirement not authorized by the statute").  The regulation neither

clarifies an ambiguity in the statute, because the statute contains no

ambiguity, nor fills any gap, as there is no gap to fill.  Therefore, Treasury

Regulation § 20.2032A-8(a)(2) is invalid.

Because this Court finds that the statute is unambiguous and that

Treasury Regulation § 20.2032A-8(a)(2) conflicts with the statute, this

Court need not proceed to step two of the <u>Chevron</u> test or address

Defendant's arguments with regard to step two of the <u>Chevron</u> test.

B.    The Case Is Not Resolved, However, Because the Parties Have
      Raised Two Additional Matters

        Two additional matters must be addressed.  First, Defendant, in its

Motion for Summary Judgment, argued for the first time that Plaintiff's

special use valuation election was invalid because there was no formal

arrangement calling for material participation by the decedent owner or a

family member.  <u>See</u> 26 C.F.R. § 20.2032A-3(f) (for indirectly owned

property, "there must be an arrangement calling for material participation

in the business by the decedent owner or a family member  . . . [E]ven

full-time involvement must be pursuant to an arrangement between the

entity and the decedent or family member specifying the services to be

performed").  In this case, the parties stipulated that although "[t]here

was no formal agreement describing who would operate the farm on

behalf of the corporation," the decedent's son, James Finfrock, actively

farmed Items 1 through 4 for the entire 8 years preceding the decedent's

death.  <u>See</u> Statement of Undisputed Fact No. 5.

In response, Plaintiff, while not contesting Defendant's ability to raise this argument for the first time, argues she agreed to the Stipulation as written because there was no written contract between Finfrock Farms and James Finfrock.  Plaintiff asserts, however, that there was an "arrangement" as that term is used in 26 C.F.R. § 20.2032A-3(f) (requiring "an arrangement calling for material participation").  In support thereof, Plaintiff submitted James' Declaration indicating that he served as chief operating officer for the corporation during all eight years at issue and engaged in no employment other than managing and operating the farms.

In its Reply, Defendant concedes that an oral agreement might satisfy the material participation requirement of the regulation but asserts that the United States was not previously informed of such oral agreement.  Defendant asserts that it has requested additional documentation from Plaintiff that might allow Defendant to abandon this argument.  Defendant also notes that the Court need not reach the

issue if the Court rules in favor of Defendant.  Because this Court has ruled in favor of Plaintiff, this remaining issue needs to be resolved. Therefore, Defendant shall advise the Court, by March 29, 2012, whether it is abandoning this argument and, if not, whether additional briefing is necessary.  If additional briefing is necessary, this Court will set a briefing schedule.

Second, the parties stipulated that, in the event the Court found in favor of Plaintiff, the parties would attempt to collaborate in the submission of a proposed final judgment which would include a calculation of the proper amount that should be refunded.  If the parties could not reach an agreement, they agreed to file supplemental briefs on that issue.  Obviously, this issue cannot be addressed until Defendant has informed the Court whether it is abandoning its argument regarding the existence of an arrangement calling for material participation.

Therefore, this issue will be addressed after Defendant advises the Court on March 29, 2012.

## V. CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment (d/e 10) and Defendant's Motion for Summary Judgment (d/e 11) are both TAKEN UNDER ADVISEMENT.  Defendant shall, by March 29, 2012, advise the Court whether it is abandoning its alternative argument in support of summary judgment and, if not, whether additional briefing is necessary.  The final pretrial conference scheduled for April 30, 2012 at 3:00 p.m. and the bench trial scheduled for May 1, 2012 are VACATED.

ENTER: March 20, 2012

FOR THE COURT:

_____s/ Sue E. Myerscough_____

SUE E. MYERSCOUGH

UNITED STATE DISTRICT JUDGE
